Good morning, Your Honors. Robert Gauminer for Eric Bacolod. Prosecutorial misconduct infected the crucial finding that Mr. Bacolod acted with intent to inflict great bodily harm. And for that reason, this Court should grant habeas relief. This was a case in which the prosecutor, in closing argument, and I want to stress, in opening closing argument, not as rebuttal to anything that First, he argued guilt by association. He raised the issue that this was a community and a culture that in which you could, you being the jury, could decide that Mr. Bacolod acted with the intent to inflict great bodily injury, basically because that's how these people act. And he started out early on in his closing by telling the jury, and I quote, in cases like this where there's an assault, the act itself doesn't make sense, and that can be hard for the State to deal with in situations like this because we bring in a jury of 12 people who come from a background where something like this happening is foreign. And then he goes on to talk about, I'm quoting a little further on, people are shy over looking at somebody the wrong way, particularly in a culture where, as defense counsel has said, the community you are looking at where you have gang activity, you have gang involvement. Wasn't that said in the context of perhaps giving some reason as to why he shot at the other people because they were members of a rival gang? Well, there was absolutely no evidence that that was the case. No one testified that the reason that whoever shot at these people, it had anything to do, was because they were members of a rival gang. It's confusing because it is true. There was a lot of reference in the trial to gangs, both gang affiliations of the victims in the case, gang affiliation of Cam, my pronunciation may not be correct, Cam Choup, and gang affiliation of Mr. Backlund. But there wasn't any evidence, as I read the transcript, and I don't think anybody even argued this, that this was a case where they were shooting at these people because they thought they were a member of a rival gang. Are you going to discuss the procedural bar issue at all? I'll discuss it if you'd like me to. And I think that the issue is very clear, is that Pertl says that the re-litigation rule does not act as a bar. There's a problem with it. Here, the gap was in the first appeal, right? There was — in Pertl, there doesn't seem to be a gap in the first appeal, or at least the record doesn't so reflect. But here, there was no appeal from the Court of Appeals to the Washington Supreme Court on a direct appeal. Am I right about that? There was a — what I think the correct statement is that there was a motion for discretionary review, but it didn't involve the prosecutorial misconduct issue, I think is what happened. Okay. Did Mr. Baslaw try to file his own petition at that point? No. He did try to file a supplemental motion for discretionary review, but that was denied because counsel had already filed one. That was denied or was it not acted upon at one point? I thought there might be some argument that maybe they did act on it. But leaving that aside, assuming they didn't act on it, why isn't this quite different from Pertl? Because the Washington Supreme — the case — the Washington court the second time around invoked the re-litigation rule because as far as they were concerned, it had been litigated. But no one — they didn't care if it had been litigated in the Washington Supreme Court. In fact, it never was. Well, the reason that it doesn't matter is because Pertl isn't grounded on the idea that the re-litigation rule doesn't apply to Pertl. The way I think Pertl reads, and I think this is the way both the majority read it and the way Judge Tallman in his dissent understands it, is that once the Washington — the Washington court of appeals says, look, you've been bothering us too much. We've heard this already. So basically — But we know they didn't hear it. Well, what the commissioner said in his ruling was he specifically said that this issue was addressed by the Washington court of appeals. Therefore, under the Washington state re-litigation rule, we are not going to consider this issue. And he cites to In re Lord. And while it might be true, though, I agree you can't really tell — it's a little unclear from the language in Pertl precisely what happened. Pertl doesn't say that we're only going to — we're only going to apply this re-litigation standard that we're enunciating in cases where the person didn't raise the issue at all on direct appeal. Pertl just says — makes a flat-out statement. The indication of the Washington re-litigation rule does not bar Federal court consideration. And I think you would have to overrule Pertl, which, with all due deference to the court, one panel can't overrule another panel. You would have to do that in order to find that Mr. Backlod isn't entitled to present his claims here. I would also point out, and I apologize that I don't have a citation for this, but I was talking to Mr. Zuckerman, who apparently has done a lot of cases in this court. But he — he assures me that there is a case called Riley v. Payne, which he litigated, which presents the same factual scenario as present in Mr. Backlod's case, and that this Court decided that that wasn't a — the re-litigation rule wasn't a procedural bar. And I will — I will supply the Court with a citation, if you would like. Well, the district court — the Federal magistrate judge in the district court didn't consider the claim to be procedurally barred. They considered it on the merits, did they not? Yes, they did, Your Honor. The magistrate — the magistrate judge, Judge Arnold, said that even if the claim is procedurally barred, I'm going to consider it on the merits because Mr. Backlod is making a claim of actual innocence. But he did — and then he went on to consider the claims of prosecutorial misconduct on the merits. And the district court adopted that report and recommendation and even considered Mr. Backlod's untimely filed objections to the magistrate judge's report. That's correct, Your Honor. If I can revert back to the prosecutorial misconduct, I agree with something that was said in the — the first argument here, which is that in assessing prosecutorial misconduct, you have to look at the totality of the case and the totality of the evidence. And what's very troubling here is that in a case where there was very weak evidence of the critical issue of intent, the prosecutor made a number of arguments that all combined together and act symbiotically to really mislead the jury in a very fundamental way. He talks about — he refers to gangs and gang culture. He refers to a statement that Michelle Ford, a witness who never even showed up in court, this was a hearsay statement that she said, when you shoot, you shoot to kill, and he attributes that intent to Mr. Backlod. He refers to statements made by Mr. Cam, too. He first — he incorrectly states the evidence about what Cam Chiup said, because Cam Chiup never said, I shot at those people intending to inflict great bodily injury or any variation on that point. And then he goes on to attribute that state of mind to Mr. Backlod. And, you know, you take all those things together and couple them further with the — his argument that there's an irrebuttable presumption that once you point a gun in someone's direction and shoot, that you're intending to inflict great bodily injury. You take all those things together, the jury ends up hearing from the prosecutor, who we recognize as someone who juries pay more than usual attention to, and gets a really distorted view of crucial evidence about intent. And intent is what led to this 41-year sentence here. It's not that he shot — Mr. Backlod was convicted merely of taking a gun and shooting it at three people. The question is, was he shooting with the intent to inflict great bodily injury on them? That's the whole difference between first and second degree assault. And the way the prosecutor argued this case — And if someone shoots a gun directly at you, don't they intend to — Well, I realize that there's a certain seductive sound to that argument. That's not really the case. You can be shooting in someone's direction and not intending to actually inflict great bodily injury on them. You can be — You could be shooting, you know, off to the side. But if you were shooting right at them — Well, it — You're really saying, as I understand it, we don't know that he was shooting right at them. Exactly. Exactly. I mean, if — But he was shooting right at them. If the evidence was absolutely clear, or not even absolutely clear, if there was good evidence that he was standing there, pointed the gun at the guy's head, and pulled the trigger, there would be nothing wrong with the statement. What's wrong with the statement is the fact that the evidence about that's kind of hazy. The evidence was pretty fuzzy. I mean, you can tell that the prosecutor, really, when talking about intent, you look at his statement on page — when he says — Let me ask you this while you're looking that up. Isn't that argument foreclosed by the jury verdict? Wasn't that an element of the offense? Well, it was an element of the offense. The question is, did the prosecutor's argument infect the jury's determination of that — of that conclusion? That's what we're arguing. And if I may just — and this is when the prosecutor says, Cam's testimony is that he, being the shooter, pointed directly at them, intended to hit them. The defendant testified that Michelle Fort said, if you shoot, shoot to kill. That is the culture that you're dealing with. That's the community that you're dealing with. That's your gauge for determining someone's intent. And then, as sort of an afterthought, it's a comment in the testimony of the victims. I mean, it's clear he's relying on intent on the things we're complaining on and not the testimony of the victims. So I think that's what the argument is, that he was using illegitimate means to argue for what is really the crucial element in the determination for first-degree assault. I think I'm over my time. For time, give one minute on rebuttal.  Thank you very much, Your Honors. May it please the Court. My name is Paul Weiser. I'm an Assistant Attorney General for the State of Washington, appearing on behalf of Appellee Miller Stout. We've asked that the Court affirm the district court's decision denying habeas corpus relief. I have raised in the brief the procedural default issue. And if the Court does have any questions about that, I would be happy to answer them. How do we know precisely that the Washington — as I understand it, Bacalod himself did file a material in the Washington Supreme Court raising this issue? Your Honor, he filed a motion — A direct appeal, right? Yes, Your Honor. And the Court declined to rule in the motion because the counsel had already filed a petition, right? That's correct, Your Honor. Filed it again, which was denied as unnecessary, because counsel had already filed a timely petition for review, right? That's correct, Your Honor. Do you have any reason to think the Washington Supreme Court didn't consider this issue on the merits? I'm sorry. I didn't understand the question. How do we know that they didn't — they denied it as unnecessary, but do we have any reason to think that they didn't regard the issue as properly before them? Your Honor, they did not. The issue did not reach the Court. How do we know that? Because nothing was filed with the Court. No — no briefing was filed with the Court on direct appeal in the Washington Supreme Court. That's what I just asked you. Addressing the process. I thought these two documents were filed with the Washington Supreme Court. I believe it was a motion that was filed with the Court, a motion to file a petition for review, raising these issues. And it was denied as unnecessary because counsel had already filed a timely petition for review. That's correct, Your Honor. On — on direct appeal, the defendant was represented by counsel here who was filing a petition for review. There's nothing in the Washington rules that says that he gets to file two petitions for review, a pro se supplemental petition. I'm just asking how we know for sure that the Washington Supreme Court regarded this issue as not before it, when, in fact, papers were filed before it raising the issue. Papers were — were filed, and the motion was denied, Your Honor. So the motion — As unnecessary. As unnecessary because the — the petition for review, the one petition for review that Mr. Bacolod had a right to present to the Washington Supreme Court had already been filed by that time. So his supplemental submissions did not make it to the Court, nor did his prosecutorial misconduct arguments make it to the Washington Supreme Court on direct appeal. Now, he did attempt to do it again in — in the personal restraint petition that he filed. But, of course, as the — the Court has pointed out, there was a — a ruling by the state Supreme Court, by the commissioner of that court, that it was barred by Washington's relitigation rule. And we believe that — But the relitigation rule is — does come under PIRTL, right? It comes under PIRTL. I disagree with — with counsel's assessment of the effect of PIRTL. I believe in the PIRTL case, this Court said that the Washington Supreme Court improperly applied the relitigation bar to the facts of Mr. PIRTL's case. But who didn't say that? I believe it did, Your Honor. In fact, we conceded that. I mean, it seems to me it did apply to improperly, but it's not what the Court said. Well, I — I disagree with Your Honor. I believe that the Court found that it was erroneously implied in that case. And I — I understand that we may differ on this. And that was the reason I was not intending to argue so much the procedural default issue, because I realize there are two ways to the same destination here. I believe the result is the same whether the Court considers the merits of Mr. Bacolod's claim or whether the Court decides it on the procedural default issue. Now, we've heard a lot today, and we also read in — in Mr. Bacolod's brief about these horrible, egregious, outrageous, obscene, nasty things that the prosecutor said about Mr. Bacolod. It's interesting to note that defense counsel, who was representing Mr. Bacolod, who was present on the scene, was there during real time, did not see fit to object to any of these remarks that are now being characterized as being so sinister, as being racially coded language by the prosecutor, pointing to the defendant's infamousity. And it is a little peculiar to argue that because somebody else said, shoot to kill, and because somebody else, when he earlier testified that he did it, said he intended to — to kill somebody, that that meant that this guy, because he came from the same culture, whatever that means, intended to kill him. Well, Your Honor, I think it's a comment on the fact that we've got three young people in a car who get disrespected. I think they described it as mean mugging by the three victims. And what's their reaction, their first reaction to this perceived slight against their integrity and their honor? Well, we've got to kill these people. These people have got to die. I think that's what the prosecutor was referring to when he was talking about the culture and the community. Well, where do we get this, these people got to die? Where does that come from? Well, we hear it from Krista Ford's hearsay statement, Your Honor. And that was through the testimony of Mr. Bacalod himself. He recalled that statement having been made. So that's where that testimony came from. We have Com Shope — and I apologize if I'm mispronouncing that name — he — Did the State court find this statement improper but not — but harmless or not improper? Your Honor, I believe it came out from the defendant's testimony. So I don't believe that there was any assertion that there was — No, I mean, did the State court of appeals — Are you referring to the prosecutor's statement? The prosecutor's — Prosecutor's statement. They found that that was not misconduct, that that was a fair comment. Like an unreasonable determination, leaving aside the prejudice question for now? No, Your Honor. That, at best, is an ambiguous statement. There was nothing about the defendant's ethnicity or — Actually, there were several different cultures involved in here. The driver of the car, it's my understanding, Ms. Ford, is Caucasian. I believe that the three victims in this case were African American, and that the other two in the car, including Mr. Bacalod, were of Asian descent. Which culture are we referring to if, in fact, the prosecutor was invoking the ethnicity of the defendant? And I don't believe that he was. I believe, instead, he was suggesting that these three people are so consumed — Fair culture, they're — they're talking about, to argue that somebody's intention changed by what their friend said rather than what they said or thought is a rather strange way to ask the jury to decide something. Your Honor, I think that was a fair comment on a piece of evidence. Circumstantial evidence that came in during the trial. This is what was the intent or the motivation of the three people in the car. That these people, who had just disrespected them just moments before that, needed to have some violence done to them. And I think it's a fair comment on evidence that was properly admitted in trial. And the victims in this case said that the shooter, Mr. Bacalod, pointed the gun directly at them and fired two or three times. And I believe a reasonable jury can reasonably infer under those circumstances that Mr. Bacalod, by pointing the business end of the gun, intended to inflict great bodily harm to the victims. So I don't believe that there was anything improper at all in the prosecutor's discussion of what Mr. Bacalod's likely intent was by jumping out of the car, pointing a gun in the direction of the three victims, and firing off two or three shots. Now the standard of review, as was pointed out earlier in one of the earlier cases, is the narrow standard of due process. Specifically, Darden v. Wainwright and Donnelly v. Cristoforo. And it's Mr. Bacalod's burden to show, if he can, that the prosecutor's remarks so infected this trial with unfairness to make his conviction a violation of due process. And we also have to be careful not to presume that the remarks that have been isolated by the petitioner are presumed to have had the most damaging meaning or that the jury necessarily drew that. We have to look at the record of the trial, and the court does have that available, as did the district court. The jury instructions, in fact in this case there were reminders to the jury that the arguments of counsel were not evidence, and if they were contrary to any evidence that was presented to the jury, that they should disregard it. And this court has commented that the arguments of counsel generally carry less weight with the jury than jury instructions do. And in Mr. Bacalod's case, the jury received that instruction. That was instruction number one at excerpt of record 129. Again, we had no objection by defense counsel at trial to any of these comments that Mr. Bacalod has now suggested were so sinister and so destructive and so violative of due process that he's entitled to habeas corpus relief. We know that the Washington Court of Appeals reviewed this claim under the correct legal standard. In fact, I would argue that the substantial likelihood of prejudice standard that the Washington Court of Appeals applied was undoubtedly a much more favorable standard to a criminal defendant like Mr. Bacalod than the Darden v. Wainwright due process standard. And I believe that if you compare the argument in this case with the argument in Darden v. Wainwright, the argument in this case really pales in comparison. And because of the deferential standard of review under 28 U.S. Code Section 2254D, and because of that narrow standard of due process review under Darden v. Wainwright and Donnelly v. DeChristoforo, and the fact that defense counsel made no objection to any of these comments, we would ask that the Court affirm the district court's decision in all respects and deny habeas corpus relief.  Thank you, Your Honor. Mr. Bader, if you have one minute, we can hear it. I don't have any comments that, of my own, that were probably that startling. But I would like to just refer the Court to United States v. Garcia, which is a Ninth Circuit case at 121 or 151, that they're 1243, where this Court noted that its particular concern about arguments that apply that ask juries to convict based on guilt by association, and especially in the context of gang cases. And the Court – I would also ask the Court to refer to the very recent case of Kennedy v. Lockyer, where the Court again expresses its extreme concern about arguments asking juries to find evidence of intent based on membership in a gang, or in this case, this culture and community argument. And I think that does meet the standard under Darden v. DeChristoforo. Thank you very much.
judges: B. Fletcher, Hamilton Berzon